**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ADRIAN SIMON,

                Petitioner,

    v.

ANTHONY NEWLAND, Warden,

                Respondent.

NO. C 01-20508 JW (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, a California prisoner currently incarcerated at Solano State Prison, and proceeding in *pro se*, seeks a writ of habeas corpus under 28 U.S.C. § 2254, based on his contentions that, (1) the trial court abused its discretion in not granting his *Marsden* motion; (2) the trial court prejudicially erred in its response to a juror note; (3) the trial court erred in its instruction to the jury as to presuming the identity of a person from his or her name; (4) the trial court erred in permitting the jury to rely on the preliminary examination transcript as evidence of prior convictions; (5) the trial court erred in admitting evidence not disclosed prior to trial; (6) the trial court's jury instruction regarding a defense witness who failed to return to complete her testimony was improper and argumentative; (7) he received ineffective assistance of appellate counsel; (8) he received ineffective assistance of trial counsel; (9) the trial court erred in improperly influencing his decision not to testify after he repeatedly indicated his desire to do so; (10) he was improperly subjected to physical restraints at trial; (11) the trial court erred in failing to *sua sponte* instruct the jury on CALJIC 1.04

1

regarding the restraints; (12) the trial court erred in denying his motion to disclose the identity a confidential informant; (13) the trial court erred in denying his motion to dismiss pursuant to California Penal Code ("CPC") § 995, based on the allegedly improper denial of his suppression motion; (14) application of California's "Three Strikes" law to prior offenses that occurred before March 7, 1994 violates the federal constitutional prohibition against *ex post facto* laws; (15) the evidence was insufficient to support the findings on his prior convictions; (16) California impermissibly adopted its "Three Strikes" law both as a voter initiative and a legislative enactment thereby violating his constitutional rights in some way; (17) application of the "Three Strikes" law to prior convictions based on guilty pleas represents a "broken promise" by the state and violated his constitutional rights; and (18) his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment.

This Court found the claims, liberally construed, were cognizable and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause, and petitioner has filed a traverse.

## BACKGROUND

In 1995, a Santa Clara Superior Court jury acquitted petitioner Adrian Simon of possessing cocaine base for sale and convicted him of the lesser felony of possessing cocaine base (Cal. Health & Saf. Code, § 11350) and the misdemeanor of possessing controlled substances paraphernalia. (Cal.Health & Saf. Code, § 11364.) In bifurcated proceedings, the jury also found that petitioner had three prior serious felony convictions, in 1983 for burglary of an inhabited dwelling, in 1984 for battery involving personal infliction of great bodily injury, and in 1990 for assault involving personal use of a dangerous and deadly weapon. On a first appeal, the California Court of Appeal rejected most of petitioner's claims of error, but reversed and remanded to give the trial court an opportunity to exercise its discretion under People v. Superior Court (Romero) (1996) 13 Cal.4th 497 and consider whether to strike petitioner prior strikes. On remand, the trial court declined to strike any of the priors, and resentenced petitioner to life in prison with a minimum term of 25 years. Rejecting petitioner's arguments in a second appeal that the sentence is unconstitutionally cruel or

unusual, the Court of Appeal affirmed the judgment.  The California Supreme Court denied review,

and petitioner exhausted his habeas remedies in state court.

The California Court of Appeal summarized the prosecution's evidence at trial as follows:

> On May 3 and 4, 1995, Nick Dunson lived in room number 1 at the Rainbow West Motel in Mountain View.  Dunson testified that, on May 3, he met defendant at a telephone booth near the motel.  He had met defendant over a year before on a bus and had met him again in April 1995.

> On May 3, defendant said he was homeless and asked Dunson if he and his girlfriend could spend the night.  Dunson allowed them to.  Defendant and his girlfriend stayed at the motel room the following day, May 4.  Defendant said his car was being fixed.  Dunson left the room that afternoon to see a movie and to shop for groceries.  He traveled by public transit.

> Around 9 p.m. on May 4, Mountain View Police Officer Michael Hamlin and five other officers went to the motel room.  They determined that Dunson was the registered tenant.  The curtains were closed.  When an officer knocked on the door, defendant opened it.  He was the only occupant of the room.

> The police handcuffed defendant and searched the room.  Police found a brown paper bag located in a dresser drawer.  Inside the bag were a glass test tube, a box of baking soda, a box of Brillo pads, a razor, and a prescription with defendant's name on it.  Hamlin removed the bag from the dresser without looking closely through the contents.  Paperwork with Dunson's name was also found in the dresser drawer.

> On top of a wall heater in the motel room, Hamlin found a portion of brass pipe with a Brillo pad stuffed in one end and fragments of whitish material at one end.  The pipe was apparently removed from the wiring of a lamp in the motel room.

> On top of a towel rack in the motel room, the police found a box of Bounce fabric softener.  Inside the rolled portion of the fabric softener was tissue paper.  Removing the tissue paper revealed two plastic baggies, inside of which were seven large rocks of cocaine base and several smaller ones.  The net weight was 1.46 grams.

> In Officer Hamlin's experience, base cocaine, which is also called crack or rock, is produced by mixing powder cocaine with baking soda in water and heating the mixture in a test tube.  It separates into an oil at the top and a ball at the bottom of the tube that will crystallize into a rock in cold water.  Crack cocaine can be smoked in a pipe through a Brillo pad.  Rocks of cocaine sell for about $20 on the street.  In his opinion, the rocks of cocaine were possessed for sale.  Users rarely keep much cocaine around.

> The police arrested defendant and took him to the police department.  After being advised of his rights under Miranda v. Arizona (1966) 384 U.S. 436, defendant agreed to talk to Office Hamlin.  Defendant said he had been paying Nick Dunson $5 to $10 a night to stay in the room the past few nights because defendant was homeless.  Defendant admitted that the crack pipe, the baking soda, and the Brillo pads were his.  Defendant said the cocaine was Dunson's, not his.  He said he had used the "crack" with Nick about an hour before the police arrived.

> Dunson returned to the room after it was searched.  He testified that the

Bounce fabric softener was his.  But he denied knowledge of the cocaine and the paper bag which contained Brillo pads, baking soda, and a  test tube.  He denied that defendant had paid him to stay over.  He denied using cocaine with defendant.

A blood sample was taken from defendant after his arrest.  It revealed the presence of cocaine as well as a cocaine metabolite, which is the result of the human body breaking down cocaine.  Cocaine degrades rapidly so the test revealed that defendant had used cocaine within the last four to six hours.  Defendant's blood sample also revealed methamphetamine but not a methamphetamine metabolite.  The time for methamphetamine to degrade is unknown.

Petitioner did not testify in his own defense.  The California Court of Appeal described the defense evidence as follows:

[Defendant's] mother testified that he had been living with her in her Mountain View apartment for the last year with his girlfriend, Karen Green Campbell.  She denied that defendant was homeless.   She acknowledged that defendant had cleared out of her apartment for the first few days of May because her dying sister was staying there.  To her knowledge, defendant was at his cousin's house the evening of May 3, 1995.  He was at her apartment the afternoon of May 4, but was gone in the evening.

Robert Curry, defendant's cousin, testified that defendant was sleeping at Curry's apartment when Curry woke up on May 4.  Defendant had not been there when Curry went to sleep.  Curry saw defendant asleep until 1 p.m., when Curry left.  Curry's apartment is two miles from the Rainbow West Motel.

The manager of the Rainbow West Motel testified that defendant was never a registered tenant.  He never gave Dunson permission to have defendant stay over.  When the police came, he gave them the key to Dunson's room and showed them Dunson's registration card.

Defendant's girlfriend, Karen Green Campbell, testified on direct examination, but did not return to the court for cross-examination.  Campbell said she lived with defendant at his mother's house, which was about four blocks from the Rainbow West Motel.  She met Nick Dunson in mid-April 1995 through defendant.  She saw Dunson use cocaine in his room almost every day for two weeks before May 4, 1995.  He was always under the influence.

On May 3rd, Campbell accompanied defendant to Dunson's room.  As usual, defendant asked to do a few hits of cocaine.  Campbell did not use cocaine with Dunson, although she had used it before.  She and defendant stayed at Dunson's until late in the evening on May 3rd, when defendant went to his cousin's house.  She did not live with defendant in the motel room.

On May 4th, Campbell and defendant returned to Dunson's room around 10 a.m.  Dunson left after a while.  Campbell went for a walk in the evening.  When she returned, she saw police officers closing the room prior to searching it.  She did not see defendant ever touch the box of Bounce fabric softener.

4

United States District Court

For the Northern District of California

1

2

3                                    **DISCUSSION**

4        A. <u>Standard of Review</u>

5        This court may entertain a petition for a writ of habeas corpus "in behalf of a person in

6   custody pursuant to the judgment of a State court only on the ground that he is in custody in

7   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

8        The writ may not be granted with respect to any claim that was adjudicated on the merits in

9   state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

10   contrary to, or involved an unreasonable application of, clearly established Federal law, as

11   determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

12   on an unreasonable determination of the facts in light of the evidence presented in the State court

13   proceeding." *Id.* § 2254(d).

14        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

15   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

16   state court decides a case differently than [the] Court has on a set of materially indistinguishable

17   facts." *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Under

18   the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

19   identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

20   that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue

21   the writ simply because the court concludes in its independent judgment that the relevant state-court

22   decision applied clearly established federal law erroneously or incorrectly. Rather, that application

23   must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable

24   application" inquiry should ask whether the state court's application of clearly established federal

25   law was "objectively unreasonable." *Id.* at 409.

26        A federal habeas court may grant the writ it if concludes that the state court's adjudication of

27   the claim "resulted in a decision that was based on an unreasonable determination of the facts in

28   light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court

1    must presume correct any determination of a factual issue made by a state court unless the petitioner

2    rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

3        The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in

4    the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.

5    *Id.* at 412; *Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir.2003). While circuit law may be

6    "persuasive authority" for purposes of determining whether a state court decision is an unreasonable

7    application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state

8    courts and only those holdings need be "reasonably" applied. *Id.*

9

10       B. Claims and Analysis

11           1. *Marsden motion*

12       Three separate times during the trial, petitioner sought replacement of his trial counsel under

13   *People v. Marsden*, 2 Cal 3d 118, 84 Cal Rptr. 156 (1970). A criminal defendant who cannot afford

14   to retain counsel has no right to counsel of his own choosing.  See Wheat v. United States, 486 U.S.

15   153, 159 (1988). Nor is he entitled to an attorney who likes and feels comfortable with him.  See

16   United States v. Schaff, 948 F.2d 501, 505 (9th Cir. 1991).  The Sixth Amendment does not

17   guarantee a "meaningful relationship" between an accused and his counsel, see Morris v. Slappy,

18   461 U.S. 1, 14 (1983); it only guarantees effective representation of counsel.

19       The record shows that the trial court went to considerable lengths to elicit from petitioner the

20   basis of his desire to replace counsel and that petitioner's complaints were generalized and non-

21   specific.  The trial court evaluated the effectiveness of counsel's representation and did not find it

22   deficient.  The California Court of Appeal concluded that the trial court had been well within its

23   discretion to deny the requests for new counsel under all the circumstances.  Petitioner has not made

24   a showing to the contrary, and has not established any violation of clearly established federal law.

25   Accordingly, petitioner's claim is DENIED.

26

27           2. Response to juror note

28       During deliberations, the jury sent the court a written note asking, "Does the fact that cocaine

6

**United States District Court**

For the Northern District of California

was found in a person's bloodstream constitute possession (under the law)?" In the jury's absence, the court observed that there was no simple yes and no answer, since someone could slip "a mickey into the punch" and unwittingly ingest a controlled substance.  The court also expressed a concern that a yes or no answer would be too directive of a verdict.  Instead, the Court responded to the jury in writing that, "The essential elements of possession of a controlled substance are dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character.  Each of these elements may be established circumstantially.  The fact, if it be a fact, that the defendant has consumed or ingested the drug does not preclude a finding of his prior unlawful possession of it."   As the California Court of Appeal explained, this answer accurately stated California law.  See People v. Palaschak,  9 Cal.4th 1236, 1241 (1995).  Petitioner contends that the court should instead have simply answered "no."  The California Court of Appeal held that such an answer, "would have been too simple and misleading" because, "[c]ocaine in the bloodstream constitutes evidence of ingestion, which amounts to some evidence of possession, though insufficient in itself."  The Court of Appeal's analysis was sound, and petitioner has failed to show error occurred, and even less so any violation of clearly established federal law.  Accordingly, petitioner's claim is DENIED.

### 3. Jury Instructions

Petitioner contends the trial court should not have instructed the jury that, "the identity of a person may be presumed, or inferred, from identity of name," and that the court should instead have relied on the general instructions as to circumstantial evidence.  The state concedes that the general instructions on circumstantial evidence would have sufficed, but argues that the challenged instruction was a correct statement of law that created no prejudice to petitioner.

The instruction did not misstate the law.  It has long been understood that, "concordance in name alone is always some evidence of identity of person."  McInerney v. U.S., 143 F. 729, 739 (1st Cir. 1906).  Moreover, petitioner has failed to show that *giving* the instruction violated any clearly established federal precedent.  Additionally, evidence of his prior convictions included his fingerprints and photograph such that it cannot be said the jury likely gave undue weight to

United States District Court

For the Northern District of California

1    petitioner's name.  Accordingly, petitioner's claim is DENIED.

2

3                    4.  Preliminary examination transcript as evidence of prior convictions

4            Petitioner contends the trial court erred in permitting the prosecution to use the transcript of a

5    preliminary hearing to prove that his prior battery conviction involved the infliction of great bodily

6    injury, thereby qualifying it as a strike.   Such evidence is admissible under California law for those

7    very purposes. People v. Reed, 13 Cal.4th 217 (1996).  The opposition to the petition relies solely on

8    Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980),  to rebut petitioner's

9    contention that use of the transcript violated his rights under the Confrontation Clause of the Sixth

10   Amendment.  After the date the opposition was filed, Ohio v. Roberts was overruled.  See Crawford

11   v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  Nevertheless, even under

12   Crawford, there is no bar against introducing prior testimony where the witness is unavailable and

13   defendant had the opportunity to cross-examine during the prior testimony.  Crawford , 541 U.S. at

14   68, 124 S.Ct. at 1374.   Those conditions existed here because petitioner had the opportunity to

15   cross-examine at the preliminary hearing and the witnesses were legally precluded from testifying,

16   and therefore unavailable, at the trial in this matter.  See People v Reed, 13 Cal.4th at 226 (live

17   testimony from witnesses to prior offense barred because it "would have been evidence outside the

18   record, used to relitigate the circumstances of the prior offense.")  Accordingly, there was no error in

19   the use of the transcript and petitioner's claim is DENIED.

20

21                    5. Undisclosed evidence

22           Petitioner contends the trial court erred in admitting evidence of a prescription in his name

23   found in "the brown paper bag" that also contained the drug paraphernalia described above.

24   Apparently no one had noticed the prescription until the bag was opened on the witness stand by

25   Officer Hamlin.  The existence of the  prescription in the bag had not been disclosed to the defense

26   during discovery and its contents had not been introduced in evidence at the preliminary

27   examination.

28           The evidence of the prescription was inculpatory, not exculpatory, as it only more clearly

linked petitioner to the drug paraphernalia.  The Constitution does not generally require disclosure of inculpatory evidence prior to trial.  See <u>Gray v. Netherland</u>, 518 U.S. 152, 168-170, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) ("To put it mildly, these cases do not compel a court to order the prosecutor to disclose his evidence; their import, in fact, is strongly against the validity of petitioner's claim.") Even assuming, however, that a prosecutor's willful failure to disclose material inculpatory evidence for purposes of gaining a tactical advantage might in some circumstances rise to the level of denying a defendant a fair trial, no such circumstances possibly appear here.  As the state Court of Appeal observed, "Defendant overstates the importance of the prescription.  It was not the only evidence linking him to the paraphernalia.  Defendant admitted that the paraphernalia was his and that he had recently used it.  The prosecutor's argument to the jury relied on this admission and not on the prescription."  Thus, neither is there any indication that the evidence was material nor is there any suggestion that it was willfully withheld.  Accordingly, petitioner's claim is DENIED.

### 6. Jury instruction regarding defense witness

Karen Green-Campbell testified as defense witness.  Court adjourned for the day after her direct testimony and approximately ten minutes of cross examination.   The trial court stated to Campbell, "I would direct you not to discuss this testimony with any witnesses, friends, relatives or anything that's happened in the court.  If you would be here at 15 minutes before 9:00 tomorrow morning."  Campbell failed to appear the following day, and was never located despite efforts by both the prosecution and defense counsel.

In closing instructions, the trial court told the jury, "Ms. Karen Green-Campbell was ordered to appear for continued cross-examination.  She failed to appear without any good cause shown.  You may consider that fact in evaluating her credibility."  Petitioner contends the instruction was argumentative and without foundation, given that the court's statement "if you would be here" was "permissive," rather than a "direct order for her to return."  The California Court of Appeal observed that the trial court's statement to Campbell, "could be either a request or a command, depending on intonation," and that "[t]he record provides no basis for disagreeing with the trial court's own characterization of this statement as an order."   The appellate court's point about the importance of

intonation is apt, but the claim of error also lacks merit given the *context* of the trial court's statement.  It may be true that the trial court did not phrase its statement to Campbell as a direct order, per se, but it is difficult to see how any reasonable witness would not understand that she or he had an *obligation* to appear at the time specified.  Petitioner has failed to show that the challenged jury instruction was erroneous at all, and has not shown that it was constitutional error sufficient to support habeas relief.  Accordingly, petitioner's claim is DENIED.

### 7.  Ineffective assistance of appellate counsel

Petitioner contends his state court appellate counsel failed to raise on appeal certain arguments that he has presented in this habeas petition.[1]  It is not entirely clear which arguments he contends were not presented as the petition states only  that counsel "failed to raise any of the above or throughout grounds for relief."[2]  The implication that appellate counsel failed to raise the first six claims "above" is belied by the fact that all but claim 3 *were* raised on direct appeal.  To the extent petitioner intends "throughout" to refer to other claims herein, it appears that only claim 15 and his various challenges to the constitutionality of his sentence under the "Three Strikes" law may not have been fully articulated on direct appeal.  As reflected in this order, those claims lack merit, not simply under federal habeas standards, and there is no reason to believe that those arguments would have prevailed on appeal.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984).  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant

---

[1]  Petitioner also asserts that his two appellate attorneys "were working under a conflict of interest," apparently based on the fact that one was "private appointed" and the other was working under the auspices of the Sixth District Appellate Project.  Petitioner has failed to show any actual conflict of interest.

[2]  The state reads the petition as claiming that appellate counsel failed to raise certain claims later made in the *state* habeas proceedings.

United States District Court

For the Northern District of California

1  therefore must show that counsel's advice fell below an objective standard of reasonableness and

2  that there is a reasonable probability that, but for counsel's unprofessional errors, he would have

3  prevailed on appeal. <u>Miller</u>, 882 F.2d at 1434 & n.9 (citing <u>Strickland,</u> 466 U.S. at 688, 694; <u>Birtle</u>,

4  792 F.2d at 849).

5       Importantly, appellate counsel does not have a constitutional duty to raise every nonfrivolous

6  issue requested by defendant.  See <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983); <u>Gerlaugh v.</u>

7  <u>Stewart</u>, 129 F.3d 1027, 1045 (9th Cir. 1997); <u>Miller,</u> 882 F.2d at 1434 n.10.  The weeding out of

8  weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  See <u>id</u>.

9  at 1434.  Appellate counsel therefore will frequently remain above an objective standard of

10  competence and have caused his client no prejudice for the same reason--because he or she declined

11  to raise a weak issue.  <u>Id</u>.

12       Here, petitioner has not made the requisite showing.  Accordingly, his claim is DENIED.

13

14            8.  <u>Ineffective assistance of trial counsel</u>

15       A claim of ineffective assistance of trial counsel is cognizable as a claim of denial of the

16  Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of

17  counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark for judging any

18  claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of

19  the adversarial process that the trial cannot be relied upon as having produced a just result.  <u>Id.</u>

20       In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must

21  establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it

22  fell below an "objective standard of reasonableness" under prevailing professional norms.

23  <u>Strickland</u>, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's

24  deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

25  unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694.  A

26  reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id</u>.

27       Petitioner identifies eleven instances of allegedly deficient performance by his trial counsel.

28  The state Court of Appeal rejected the first ten of these in an analysis with which this Court agrees:

United States District Court

For the Northern District of California

First, it is difficult to fault [counsel] for relying on the police report summary of the contents of the brown paper bag, rather that personally inspecting the bag and discovering defendant's prescription. In any event, defendant was not prejudiced by this oversight. The prescription was relevant and admissible evidence. Defendant does not suggest how advance notice might have resulted in its exclusion.

Second, a chain of custody objection to the prescription would have been futile, as Officer Hamlin testified that he alone sealed the bag, put it into evidence, and unsealed the bag at trial. Futile objections are not the mark of a competent defense attorney. (Cf. People v. Johnson (1991) 233 Cal.App.3d 425, 439;  People v. Jones (1979) 96 Cal.App.3d 820, 827.)

Third, though [counsel] did not make a motion to withdraw as defendant's attorney, during defendant's first Marsden motion, [counsel] did say he felt he was doing defendant a disservice. The court denied the motion. [Counsel] had no reason to believe a motion to withdraw would have been more successful than defendant's requests for substitute counsel. We see no evidence of incompetence in this alleged omission.

Fourth, defendant contends that [counsel] should have demanded that the court order Karen Campbell back to testify. As we have noted above, what the court did say to her can reasonably be regarded as an order. In any event, nothing in the record suggests either that [counsel] should have anticipated that Campbell would not return to testify or that a more strongly worded statement by the court would have compelled her to return.

Fifth, defendant contends that [counsel] should have objected more to defendant being restrained, should have argued for less restrictive restraints, and should have asked that CALJIC No. 1.04 be repeated during final instructions. [Counsel] did object to the restraints. Under the circumstances, particularly considering that defendant had threatened [counsel], we regard more strenuous objection as futile. Since the record does not reveal how restrictive the actual restraints were, we cannot evaluate the likelihood of success of such an argument. [Counsel] may have had tactical reasons in not having the court call attention to defendant's restraints during final instructions, particularly considering the instruction had been given earlier the same day.

Sixth, we fail to see how defendant would have benefited [sic] had [counsel] asked, during trial of the current offenses, for an instruction on the lesser related offense of being under the influence of cocaine. (Health & Saf. Code, § 11550.) As the Attorney General points out, defendant could have been convicted and punished for both possession as well as this lesser charge. (People v. Maese (1980) 105 Cal.App.3d 710, 727.) Defense counsel may well have decided for tactical reasons to confront the jury with an all-or-nothing choice. (People v. Finney (1980) 110 Cal.App.3d 705, 712.) It is sheer speculation not rising to a reasonable probability that the jury would have acquitted defendant of possession if instructed about this lesser offense.

Seventh, contrary to defendant's claim, [counsel] did object to the court's proposed response to the jury's question about cocaine in the bloodstream.

Eighth, as discussed above, [counsel] would have no legal basis for asking for an instructional differentiation between "serious" and "great" bodily injury.

Ninth, a hearsay objection to the preliminary examination transcript in proof

of the nature of defendant's prior battery conviction would have been futile in light of
People v. Reed, supra, 13 Cal.4th 217.  Defendant was not prejudiced by [counsel]'s
omission to object to parts of the transcript.  As stated above, they were not
particularly prejudicial and, in any event, redaction would have proved almost
impossible.

Tenth, an argument to the jury that defendant did not inflict great bodily
injury during his battery of Muhlebach would have been futile, in light of the victim's
loss of consciousness and double vision.

The eleventh instance of alleged dereliction of counsel's duty (also rejected by the state
Court of Appeal) consists of generalized complaints that counsel was not adequately prepared at the
sentencing.  This issue was mooted by the reversal and remand for resentencing petitioner obtained
in his first appeal.  Petitioner has not challenged the adequacy of his representation in connection
with the resentencing after remand.

Under these circumstances, petitioner has failed to establish his claim, and it is DENIED.

### 9.  Petitioner's decision not to testify

Petitioner contends the trial court improperly influenced his decision not to testify.  It is a
violation of due process for a court effectively to drive a witness off the stand with warnings or
threats. *See Webb v. Texas*, 409 U.S. 95, 98 (1972).  The record, here, however, reflects no such
intimidation or any improper influence by the court.  To be sure, the court did warn petitioner that if
he chose to testify his prior convictions likely would become admissible as impeachment evidence
and the basis for bifurcating trial as to his prior "strikes" would likely no longer exist, and repeated
those warnings more than once.  As the California Court of Appeal recognized, however, the
circumstances warranted the trial court's careful inquiries into petitioner's choice and its explanation
of the consequences.

Defendant's first answers regarding whether he elected to testify were essentially
"no," "yes," and "yes, because I have brain damage."  There was apparently
something in defendant's demeanor or intonation not reflected in the appellate record
which caused the trial court to take even defendant's "yes' as equivocal.  Defendant's
other answers cast doubt on the sincerity of his affirmative answer, which justified
the trial court in pursuing the matter further.

Indeed, it appears that the trial court was correct to repeat the consequences of
defendant electing to testify.  After the court told defendant three times that he could
be impeached with his priors if he elected to testify, defense counsel said that this was
a concern of defendant's.  When the court stated for the fourth time that the jury

would not learn of his priors if he did not testify, defendant finally elected not to testify. Under these circumstances, even though defendant said four times that he wanted to testify, we conclude that the trial court's repetition and clarification was warranted and did not infringe on defendant's right to testify.

On this record, petitioner has failed to show any error by the trial court, much less error rising to the level that warrants federal habeas relief. Accordingly, petitioner's claim is DENIED.

### 10. <u>Physical restraints</u>

Petitioner contends the trial court prejudicially erred by ordering him placed in restraints on the final day of the trial. The California Court of Appeal summarized the events that lead to the court's order as follows:

> During a recess, defendant took a water pitcher off the defense table and threw it against a wall in the court. He stood up and yelled that he was being framed. He tore his shirt off. He took a combative stance and told court bailiffs not to touch him. He continued yelling about his attorney being no good and the trial being unfair. He appeared to be hyperventilating. The bailiffs, including Deputy Smith, finally convinced him to put his hands down, to sit down, to breathe, and to relax.

The trial court then agreed to defense counsel's request to continue the matter to the next court day (the following Monday) to give petitioner additional time to calm down. Before calling the jury back in to dismiss them, the court warned petitioner to sit respectfully when the jury appeared. Again, as described by the California court of appeal:

> The court called the jury in and explained that proceedings would resume on Monday. The following colloquy ensued. Defendant held up a sheet of paper and blurted out, "Jurors, if I'm found guilty -- this is a three-strikes-you're-out case, if I'm found guilty –"
>
> "THE COURT: Sit down, sir.
> "DEFENDANT: You can prove it from Debbie Black on the stand.
> "THE COURT: Will you leave the courtroom now? You can see that there have been some problems.
> "DEFENDANT: I would like him off my case.
> "THE COURT: Leave your notes there, please. If you'll come in on Monday morning.
> "DEFENDANT: Sorry, jurors.
> "THE COURT: Don't discuss the matter . . . .
> "DEFENDANT: Sorry, jurors. I would like for everyone to know that."

The court advised the jurors not to discuss the case. Defendant said, "Put that in your pipe and smoke it."

14

The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that restraints are justified by a state interest specific to a particular trial. Deck v. Missouri, 544 U.S. 622, 2012 ( 2005); Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999) ("Rhoden II"); Spain v. Rushen, 883 F.2d 712, 716 (9th Cir. 1989). To assess whether the shackles violated petitioner's right to due process, the trial court must analyze the security risks posed by the defendant and consider less restrictive alternatives before permitting a defendant to be restrained. Rhoden II, 172 F.3d at 636; Jones v. Meyers, 899 F.2d 883, 885 (9th Cir. 1990). But see Deck, 544 U.S. at 633 (not including "least restrictive alternative" in statement of circumstances where judge may allow shackling).

In considering less restrictive alternatives to shackling, the trial court should take in account that "(1) shackles may reverse the presumption of innocence by causing jury prejudice; (2) shackles may impair the defendant's mental faculties; (3) shackles may impede communication between the defendant and his counsel; (4) shackles may detract from the decorum of the judicial proceeding; (5) shackles may cause pain to the defendant." Id.; see also Deck, 544 U.S. at 631 (concluding that reasons for shackling rule are to (1) preserve the presumption of innocence; (2) avoid an impediment to meaningful assistance of counsel; and (3) maintain a dignified judicial process). The trial court "'must weigh the benefits and [the] burdens of shackling against other possible alternatives.'" Castillo v. Stainer, 983 F.2d 145, 147 (9th Cir. 1992) (quoting Spain, 883 F.2d at 721), amended, 997 F.2d 669 (9th Cir. 1993). The trial court need not "conduct a hearing and make findings before ordering that a defendant be shackled," however. Jones, 899 F.2d at 886.

In this case, prior to petitioner's outburst described above, Court security personnel apparently had advised the court that they perceived petitioner as a threat. Before imposing restraints, the court explained on the record that, "I believe that the interest of the safety of counsel, our staff, the public, and the jurors requires us. I've noted that I declined several invitations of our security personnel. They were wise under the circumstances, and I gave the benefit of any doubt to Mr. Simon. And he has violated the opportunity by being violent in the courtroom."

On this record, the California Court of Appeal observed, "[w]hile some cases have established a greater need for restraints, we do not believe that a trial court must wait to restrain a

1  defendant who threatens violence until the defendant carries out his threat."  Petitioner has not

2  demonstrated that the trial court's order to restrain him under the circumstances here violated his

3  federal constitution rights.  Accordingly, petitioner's claim is DENIED.

4

5  　　　　　　　　　　11. CALJIC 1.04

6  　　　　Petitioner contends the trial court erred in not giving CALJIC 1.04 *sua sponte* as part of the

7  closing instructions.  That instruction provides: "The fact that physical restraints have been imposed

8  on defendant must not be considered by you for any purpose.  They are not evidence of guilt and

9  must not be considered by you as any evidence that defendant is more likely to be guilty than

10  innocent.  You must not guess or speculate as to why restraints have been imposed.  In determining

11  the issues submitted to you, disregard this matter entirely and do not discuss it."  Under California

12  law, the must be given by the trial court *sua sponte* when a jury can observe the restraints. People v.

13  George, 30 Cal.App.4th 262, 272-273 (1994).

14  　　　　The trial court *did* give the instruction in the morning of the final day of trial, when the jury

15  first saw petitioner in restraints.  No clearly established federal law required the trial court to repeat

16  the instruction later the same day.  Accordingly, petitioner's claim is DENIED.

17

18  　　　　　　　　　　12. Disclosure of confidential informant

19  　　　　The police went to the motel room based on information provided by confidential informant.

20  The informant told the police that petitioner had been staying in the motel room for several days

21  with a man named Nick. The informant had been to the room and had seen defendant selling crack

22  cocaine out of the motel room.  The informant said that Nick was not involved in the sales.  The

23  prosecution refused to disclose the identity of the informant to petitioner.

24  　　　　In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court held that where the

25  government opposes disclosure of the identity of an informer, a trial judge must balance the public's

26  interest in protecting the flow of information against the individual's right to prepare his defense.

27  353 U.S. at 62.  The applicable balancing test is: "Where the disclosure of an informer's identity, or

28  of the contents of his communication, is relevant and helpful to the defense of an accused, or is

16

United States District Court

For the Northern District of California

1    essential to a fair determination of a cause, the privilege must give way." Id. at 61.[3]

2          The defendant bears the burden of demonstrating a need for disclosure of a confidential

3    informant's identity.  United States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993).  He must

4    show that he has more than a "mere suspicion" that the informant has information which will prove

5    "relevant and helpful" or will be essential to a fair trial.  Id.  If so, the court must apply a balancing

6    test, weighing the public interest in encouraging citizens to inform the government about criminal

7    activity, against an accused's right to prepare his defense.  Roviaro, 353 U.S. at 62.  "Whether a

8    proper balance renders non-disclosure erroneous must depend on the particular circumstances of

9    each case, taking into consideration the crime charged, the possible defenses, the possible

10   significance of the informer's testimony, and other relevant factors."  Id.

11         Here, petitioner did not establish any reasonable probability that the confidential informant

12   possessed information that would be "relevant and helpful" or essential to a fair trial.  Petitioner was

13   not charged with the cocaine sales the informant claimed to have witnessed.  Petitioner's suggestions

14   that the informant may have been able to provide further information as to what he meant by saying

15   petitioner was "staying there" and "as to who had control over the room" not only are speculative,

16   but also do not relate to information that could have helped his case, given that Dunson testified it

17   was his room and petitioner admitted he had been staying there.  Similarly, petitioner's contention

18   that the informant might have offered information as to who was doing laundry and who owned the

19   Bounce box is unavailing given Dunson's admission that it was his Bounce box.  The critical

20   question was who owned the crack cocaine hidden *inside* the Bounce box, and there was no reason

21   to believe the informant had any additional information going to that issue.  Accordingly,

22   petitioner's claim is DENIED.

23   _____

24         [3]  While Roviaro was not explicitly decided on the basis of constitutional claims, both the
     Supreme Court and lower federal courts have extended its application to such.  See, e.g., United

25   States v. Valenzuela-Bernal, 458 U.S. 858, 870 (1982) (citing McCray v. Illinois, 386 U.S. 300
     (1967)) (suggesting Roviaro would have been decided no differently if considered in context of

26   constitutional claims, and applying balancing test to Sixth Amendment and due process claims);
     Souza v. Ellerthorpe, 712 F.2d 1529, 1530-31 (1st Cir. 1983) (relying on Roviaro as controlling

27   authority for claim of constitutional error in habeas petition); Simpson v. Kreiger, 565 F.2d 390, 391
     (6th Cir. 1977) (assuming without deciding that "Roviaro claim" is cognizable in federal habeas

28   corpus); United States v. Emory, 468 F.2d 1017, 1020-21 (8th Cir. 1972) (due process concerns
     underlie Roviaro).

United States District Court

For the Northern District of California

### 13. CPC § 995 motion to dismiss

Petitioner's motion to dismiss was based on his motion to suppress evidence, which in turn was based on the claim that his Fourth Amendment rights had been violated. Stone v. Powell, 428 U.S. 465, 481-82, 494 (1976), bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims. Even if the state courts' determination of the Fourth Amendment issues is improper, it will not be remedied in federal habeas corpus actions so long as the petitioner was provided a full and fair opportunity to litigate the issue. See Locks v. Sumner, 703 F.2d 403, 408 (9th Cir.), cert. denied, 464 U.S. 933 (1983). All Stone v. Powell requires is the initial opportunity for a fair hearing. Such an opportunity for a fair hearing forecloses this court's inquiry upon habeas petition into the trial court's subsequent course of action, including whether or not the trial court made any express findings of fact. See Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986). The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, bars federal habeas consideration of those claims. See Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990) (whether or not defendant litigated 4th Amendment claim in state court is irrelevant if he had opportunity to do so under California law. California state procedure provides an opportunity for full litigation of any Fourth Amendment claim. Id.; Cal. Penal Code § 1538.5. Accordingly, this claim is not cognizable.

### 14. "Three Strikes" and the rule against *ex post facto* laws

Petitioner contends that classifying his felony convictions that pre-dated enactment of the "Three Strikes" law as "strikes" violates the Ex Post Facto clause of the Constitution that prohibits states from enacting laws with certain retroactive effects. See  U.S. Const., Art. I, § 10, cl. 1.  As the Ninth Circuit has observed in considering a similar challenge to the *federal* "Three Strikes" law, "[t]he Supreme Court and this court uniformly have held that recidivist statutes do not violate the Ex Post Facto Clause if they are 'on the books at the time the [present] offense was committed.' United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.1989) (per curiam); see also Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)." U.S. v. Kaluna, 192 F.3d 1188,

18

1199. (9th Cir. 1999).  Accordingly, this claim lacks merit and is DENIED.

### 15. Sufficiency of evidence as to prior convictions

Petitioner asserts there was insufficient evidence of his prior convictions.  The fact of petitioner's prior convictions were established by court records, prison records, and a fingerprint examiner.  Petitioner has not established any basis for habeas relief.  Accordingly, petitioner's claim is DENIED.

### 16. "Duplicate statutes"

Petitioner's sixteenth claim for relief is less than clear as to its basis.  Petitioner appears to be contending that the California Constitution precluded the state from adopting its "Three Strikes" law both as a legislative enactment and as a voter initiative.[4]  Although petitioner references the Fourteenth Amendment and the Equal Protection clause in this claim, he has failed to establish any violation of clearly established federal law.  Accordingly, petitioner's claim is DENIED.

### 17. "Three Strikes" law and prior guilty pleas

Petitioner asserts that the state "has broken it's [sic] promise on plee [sic] agreements," by imposing punishment for the present offense greatly exceeding that contemplated as punishment for the offenses that were the subject of those agreements.  As a result, petitioner contends, those plea agreements were "neither voluntary [n]or knowing" and his rights under the Fifth, Sixth, and Fourteenth Amendments have been violated.

Supreme Court precedent requires only that criminal defendants be "fully aware of the *direct*

---

[4]  In addition to the California Legislature's version of the "Three Strikes" law found at California Penal Code § 667, there is an initiative version found at California Penal Code § 1170.12. The initiative version was passed by the voters several months after the Legislature's version, and the California Supreme Court has not determined whether the latter supersedes the former.  See People v. Superior Court (Romero), 13 Cal. 4th 497, 53 Cal. Rptr. 2d 789, 791-92 (1996).  Although the two versions differ in minor respects, see id. at 792, the initiative's history demonstrates the unequivocal intent of the voters to adopt a sentencing scheme identical to the legislative version of the law.  See People v. Hazelton, 58 Cal. Rptr. 2nd 443, 446 (1996) (using initiative's history to determine that it, like the legislative version, counts out-of-state prior convictions as strikes).

*United States District Court*
For the Northern District of California

consequences" of their guilty pleas. <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970) (emphasis

added).  Petitioner has not shown that his failure to be advised of possible *collateral* consequences

from the future enactment of a recidivist statute violated his constitutional right so as to warrant

habeas relief.  In essence, this claim merely restates petitioner's *ex post facto* argument, rejected for

the reasons stated above.  Accordingly, petitioner's claim is DENIED.

### 18.  The Eighth Amendment.

Petitioner contends that a sentence of 25 years to life upon conviction for felony possession

of 1.64 grams of cocaine base is cruel and unusual in violation of the Eighth Amendment.[5]  A

criminal sentence that is not proportionate to the crime for which the defendant was convicted

violates the Eighth Amendment.  <u>Solem v. Helm</u>, 463 U.S. 277, 303 (1983) (sentence of life

imprisonment without possibility of parole for seventh nonviolent felony violates 8th Amendment).

But "outside the context of capital punishment, successful challenges to the proportionality of

particular sentences will be exceedingly rare."  <u>Id.</u> at 289-90.  For the purposes of review under 28

U.S.C.  § 2254(d)(1), it is clearly established that "[a] gross proportionality principle is applicable to

sentences for terms of years."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003).  Although the precise

contours of the principle are unclear, it is "applicable only in the 'exceedingly rare' and 'extreme'

cases."  <u>Id.</u> at 73 (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991)).  "[T]he principle

reserves a constitutional violation for only the extraordinary case."

The Eighth Amendment does not require strict proportionality between crime and sentence.

Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  <u>Ewing v.</u>

---

[5]  On January 8, 2003, after this matter had been fully briefed and submitted for decision, petitioner submitted what purported to be a "supplemental habeas corpus petition" adding a "new three strike claim."  The supplemental petition in fact only proffered additional *argument*, based on then-recent precedents, that petitioner's sentence violated the Eighth Amendment.  In particular, the supplemental filing relied on <u>Duran v. Castro</u>, 227 F.Supp.2d 1121 (2002) for the proposition that severe punishment under the "Three Strikes" law is cruel and unusual unless the offense for which sentence is imposed is similar in nature to the prior "strikes."  <u>Duran</u> relied heavily on the Ninth Circuit's opinion in  <u>Andrade v. Attorney General of the State of California</u>, 270 F.3d 743 (9th Cir.2001), a decision subsequently overturned by the Supreme Court in <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). As such, <u>Duran</u> does not compel a different result here.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

California, 538 U.S.11, 24-25 (2003)   Id. at 76;  Substantial deference is granted to legislatures'

determination of the types and limits of punishments for crimes.  See United States v. Gomez, 472

F.3d 671, 673-74 (9th Cir. 2006) (finding that Congress's decision to grant a reprieve from statutory

minimums only to certain categories of criminal defendants does not violate the Eighth

Amendment).

Here, petitioner's sentence, although harsh in the abstract, must be seen in light of

petitioner's criminal history and the state's legitimate interest in "'in dealing in a harsher manner

with those who [are] repeat[] criminal[s].'"  U.S. v. Bland, 961 F.2d 123, 129 (9th Cir. 1992)

(quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980)). As such petitioner's sentence is well within

what the courts have found constitutionally permissible.  See, e.g., Ewing, 538 U.S. at 29-31

(upholding sentence of 25-year-to-life for recidivist convicted most recently of grand theft);

Andrade, 538 U.S. at 76 (upholding sentence of two consecutive terms of 25-years-to-life for

recidivist convicted most recently of two counts of petty theft with a prior conviction); Harmelin,

501 U.S. at 996 (upholding sentence of life without possibility of parole for first offense of

possession of 672 grams of cocaine); Nunes v. Ramirez-Palmer, 485 F.3d 432, 439 (9th Cir. 2007)

(upholding sentence of 25-years-to-life for the underlying offense of petty theft with a prior

conviction after finding petitioner's criminal history was longer, more prolific, and more violent

than petitioner in Andrade, who suffered a harsher sentence); Taylor v. Lewis, 460 F.3d 1093, 1101-

02 (9th Cir. 2006) (finding no inference of gross disproportionality and upholding sentence of

twenty-five years-to-life with possibility of parole for possession of .036 grams of cocaine base

where petitioner served multiple prior prison terms and his prior offenses involved violence and

crimes against a person); Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (sentence of twenty-

five years to life not grossly disproportionate for conviction of petty theft with a prior when

defendant struggled with guard to prevent apprehension and prior convictions of robbery involved

threat of violence "because his cohort used a knife;" distinguishing Ramirez v. Castro, 365 F.3d 755

(9th Cir. 2004)); Harris, 93 F.3d at 584 (sentence of life without parole for 15-year-old murderer

does not raise inference of gross disproportionality); Carr, 56 F.3d at 39 (sentence of 22 years upon

conviction for sale of 66.92 grams of cocaine base with enhancement under federal Sentencing

1    Guidelines' career offender provision for two previous convictions for minor drug sales was not

2    grossly disproportionate); <u>Cacoperdo v. Demosthenes</u>, 37 F.3d at 508 (sentence of ineligibility for

3    parole for 40 years not grossly disproportionate when compared with gravity of sexual molestation

4    offenses).  Accordingly, petitioner's claim is DENIED.

5                                                    **CONCLUSION**

6              For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

7

8

9

10

11

12   Dated: September 26, 2007                                    _____

13                                                                JAMES WARE
                                                                  United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
     C 01-20508 JW

**United States District Court**
For the Northern District of California

**United States District Court**

For the Northern District of California

1    **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

2    Richard E. Rochman
     CA State Attorney General's Office
3    455 Golden Gate Ave  Suite 11000
     San Francisco, CA 94102-7004
4
     Adrian Simon
5    E-56293
     CSP-Solano II
6    California State Prison-Solano
     P.O. Box 4000
7    Vacaville, CA 95696

8

9    **Dated:  September 28, 2007**                              **Richard W. Wieking, Clerk**

10
                                                         **By:** _Elizabeth C Garcia_
11                                                            **Courtroom Deputy**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
     C 01-20508 JW
                                    23